OPINION
{¶ 1} Defendant-appellant Maria Linam appeals the decisions of the Columbiana County Domestic Relations Court, which granted plaintiff-appellee Lonnie Linam a deviation from the child support guidelines in both the temporary and final child support orders based upon the parties' agreement to a shared parenting order. The general issue presented by Ms. Linam is whether the magistrate and trial court erred in manner and amount when deviating from the child support guidelines. More specifically, appellant asks us to determine whether the magistrate and the trial court: (1) made sufficient findings for deviating from the guidelines; (2) erred in equalizing each parent's share of the total obligation where the parents' income is not equal; (3) granted an improper automatic credit for shared parenting; and (4) erred in considering debt allocated to the husband where the property division was equal in that he was granted assets to offset the debt. In determining each subissue, we must address Mr. Linam's contention that Ms. Linam's arguments cannot be addressed without a transcript of the divorce hearing presided over by the magistrate. For the following reasons, the judgment of the trial court as to the temporary order is affirmed, but the judgment as to the final order is reversed and remanded.
 STATEMENT OF THE CASE {¶ 2} Mr. and Ms. Linam were married in 1990, and three children were born of the marriage. In early 2001, Mr. Linam filed for divorce. In an agreed temporary judgment entry, the parties entered into shared parenting. An oral argument was held on temporary financial matters on April 5, 2001. Although, at the beginning of the hearing, the magistrate informed the parties that it had already decided on a 50% deviation from the child support guidelines and that any objections could be placed upon the record at the hearing.
 {¶ 3} The magistrate released its decision on temporary support on April 18, 2001. The worksheet attached to the decision established that Mr. Linam made $31,200 per year and Ms. Linam made $19,240 per year, which represents 61.86 percent and 38.14 percent of the total income respectively. The magistrate computed Mr. Linam's annual obligation as $8,289.53 and Ms. Linam's annual obligation as $3,927.47. The magistrate then deviated downward from Mr. Linam's annual obligation by half ($4,144.77), leaving him obligated to pay $4,144.76 per year or $352.30 per month for three children.
 {¶ 4} In its decision, the magistrate noted that Mr. Linam was to pay household debt pending the divorce. The magistrate stated that its deviation could be considered a deviation for shared parenting or a deviation for other court-ordered payments. The magistrate concluded that after its deviation, the parties have almost equal amounts of household money left to spend.
 {¶ 5} Ms. Linam filed timely objections. She complained that the decision itself did not order any child support to be paid and did not state the presumptive amount of child support or how or why the magistrate deviated from the presumptive amount. She urged that the magistrate improperly relied on some report to the General Assembly and unjustifiably rested its decision on a "paying twice" theory. She concluded that the magistrate violated the relevant statute which has mandatory requirements on child support calculations and deviations.
 {¶ 6} On June 27, 2001, the trial court overruled her objections and adopted the magistrate's decision. The court noted that although the magistrate's written decision fails to state the amount of child support ordered, the attached worksheet establishes that the intended amount of support is $352.31 per month. The court then concluded that the magistrate sufficiently justified her deviation from the guidelines based upon shared parenting and the extraordinary expenses Mr. Linam will have to pay to maintain the parties' marital assets pending resolution of the case, noting that once the divorce is final, then only shared parenting should be considered for purposes of deviation. The court then entered judgment for temporary support in the amount of $352.31 per month.
 {¶ 7} The divorce trial proceeded before the magistrate on April 29, May 6, June 3, and June 10, 2002. The magistrate released its decision on July 3, 2002. The magistrate adopted the parties' shared parenting plan and then stated: "Due to the fact that this is a true shared parenting plan with each party having the children 50% of the time, the court will deviate from the guidelines amount by the 50% time spent with each parent. This is also a deviation due to the substantial debt the court has ordered the father to pay."
 {¶ 8} In a July 19 corrected entry and worksheet, the magistrate found that Mr. Linam earns $37,650 and Ms. Linam earns $22,510.80 per year, which is 62.58 percent and 37.42 percent of the total income respectively. The basic combined child support came to $13,339.07. The magistrate figured that Mr. Linam's rebuttably presumed amount of child support was $9,780.83 per year, after an adjustment for Ms. Linam's child care expenses. The magistrate then deviated downward from Mr. Linam's yearly obligation by $6,724.53 (which number is half of the total presumed amount of support from both parties). This left Mr. Linam with a child support obligation of $3,056.30 per year or $259.78 per month. We emphasize that in the temporary order, the magistrate deviated from Mr. Linam's annual amount by 50% of his own annual presumed amount; however, in the final order, the magistrate inconsistently deviated from Mr. Linam's annual amount by 50 percent of the total of both parties' presumed amounts of support.
 {¶ 9} Ms. Linam filed timely objections. These objections argued in relevant part that the court improperly deviated from the rebuttably presumed amount of child support and that the court erred in considering Mr. Linam's debts for an expensive home and four wheelers as a reason to decrease child support. In a later memorandum to the court, Ms. Linam stated that a transcript of the four-day proceedings was unnecessary with regard to the child support issue.
 {¶ 10} On September 26, 2002, the trial court entered judgment overruling Ms. Linam's objections and affirming the magistrate's decision. First, the trial court stated that because no transcript of testimony was filed, the court is bound by the findings of fact and will only consider objections to interpretations of those findings of fact as applied in the conclusions of law. The court noted that Ms. Linam complains that Mr. Linam was given a 65 percent reduction in child support and that at best, he is entitled only to a 22 percent deviation based upon the amount of time he has the children over a standard visitation order. The court concluded:
 {¶ 11} "The Shared Parenting is a 50/50 shared parenting plan in which each party has the children 50% of the time. The magistrate's calculation realizes this and grants to the plaintiff a deviation of the child support guidelines that leaves each parent with an equal amount of the total child support obligation."
 {¶ 12} The court then reviewed the presumed amount and the reduced amount contained in the worksheet, noting that "[t]he effect is to equalize the amount of the basic combined child support obligation each party receives." The court opined that after Mr. Linam's obligation is reduced, Ms. Linam is still receiving 60 percent of the total child support obligation. The court concluded, "[b]ased on that analysis the deviation is in the best interests of the children because it permits money for [Mr. Linam] to have to maintain a home for the children for the 50% of the shared parenting time he has the children." The court finally noted that the magistrate's language concerning debts may be considered superfluous in light of the above analysis but noted that questions of cash flow can be considered. The court agreed, however, that the magistrate erred by deviating because of Mr. Linam's debts.
 {¶ 13} Ms. Linam filed timely notice of appeal. She sets forth the following assignment of error:
 {¶ 14} "The trial court erred in the deviations it granted to appellee/father under both the temporary child support order and the final child support order."
 {¶ 15} Ms. Linam breaks her argument into four subassignments. Under each subassignment, we will address the arguments with regards to the temporary child support order and the final child support order. We will also address Mr. Linam's appellate argument that all issues required submission of a transcript to the trial court and to this court.
 SUBASSIGNMENT OF ERROR NUMBER ONE {¶ 16} Ms. Linam's first subassignment of error provides: "The trial court's failure to follow the mandatory requirements of section3119.22 et seq. constitutes reversible error."
 {¶ 17} When calculating child support, a court is to use the worksheet set forth in R.C. 3119.022 combined with the basic schedule set forth in R.C. 3119.021. The initial calculation produces a rebuttable presumption of the proper amount of child support. R.C. 3119.03; Markerv. Grimm (1992), 65 Ohio St.3d 139, 141. Pursuant to R.C. 3119.22, the court may order a deviation from the rebuttably presumed amount after considering the factors in R.C. 3119.23. These factors include other court-ordered payments and any extended parenting time. R.C. 3119.23(C) and (D). If the court deviates, it must enter three items in the journal: (1) the amount of child support calculated pursuant to the schedule and worksheet through the line establishing the actual annual obligation; (2) its determination that the presumed amount would be unjust or inappropriate and would not be in the best interests of the child; and (3) findings of fact supporting that determination. R.C.3119.22. See, also, Marker, 65 Ohio St.3d at 143.
 {¶ 18} Similarly, R.C. 3119.24 states that a court issuing a shared parenting order shall order an amount calculated under the schedule and worksheet except that if the amount would be unjust or inappropriate and not in the child's best interest because of extraordinary circumstances of the parents or any factors in R.C. 3119.23, the court may deviate from the presumed amount. R.C. 3119.24(A)(1). Extraordinary circumstances of the parent includes the amount of time the child spends with each parent and the ability of each parent to maintain adequate housing and expenses such as child care and tuition, and any other circumstance the court considers relevant. R.C. 3119.24(B)(1)-(4). Just as is required under R.C. 3119.22, if the court deviates from the presumed amount, it shall enter in the journal the presumed amount, its determination that the amount would be unjust or inappropriate and not in the child's best interests, and findings of fact supporting its determination. R.C.3119.24(A)(2). Strict compliance with these mandatory requirements for deviation is required. Rock v. Cabral (1993), 67 Ohio St.3d 108, 110;Marker, 65 Ohio St.3d at 141, 143.
 {¶ 19} Ms. Linam complains that the trial court failed to follow these requirements in both the temporary and final child support orders. Before addressing her argument, we respond to Mr. Linam's argument that a transcript is necessary for our review. Firstly, the transcripts of the proceedings before the magistrate concerning temporary support were submitted to the trial court and to this court. (See 04/05/01 Transcript.) Thus, any issues surrounding the temporary order are supported by a transcript. Regardless, Civ.R. 53(E)(b) only requires an objection to be supported by a transcript if the objection is to a finding of fact. We can determine the sufficiency of the court's journal and findings without resort to a transcript. The issue under this subassignment of error is not whether the court's findings are proper or supported by the weight of the evidence. Rather, the only issue before us at this juncture is whether the magistrate placed the three statutorily required items in its journal. Thus, Mr. Linam's contention that a transcript is required is without merit at this time.
 {¶ 20} We shall start with an evaluation of the temporary child support order, which is originally set forth in the magistrate's decision. The magistrate opined that a failure to deviate from the amount calculated under the statutes would be unjust and inappropriate and would not be in the children's best interest. The magistrate also set forth findings of fact that it believed supported its decision to deviate. Specifically, the magistrate found that a deviation was essential to allow both parties to maintain a household and preserve assets. The magistrate made findings regarding the parties' income remaining after living expenses. The magistrate pointed out that the parties had a shared parenting arrangement. The magistrate also disclosed that Mr. Linam was ordered to maintain the household expenses for the marital residence pending the divorce and that deviation was partly proper due to these other court-ordered payments.
 {¶ 21} Here, we clearly have the second and third items in the magistrate's decision. The question lies in whether the failure to place the original, presumed amount of child support (before deviation) in the judgment itself is reversible error where the magistrate attaches the worksheet as an exhibit and that worksheet contains the original amount of child support prior to the deviation. (We do note that the worksheet does not strictly follow that provided by the legislature in that it lacks space for the reasons for deviation; yet, these reasons were explained in the magistrate's decision and this issue is not raised by appellant).
 {¶ 22} Although it would be preferable to place all three findings in the judgment entry itself (and they would also be in the worksheet if a standard one was completed), it is not reversible error to fail to place one finding in the entry where that finding is contained in an attachment. It is well-established that an attachment to a judgment entry is part of that judgment entry. Courts frequently attach shared parenting arrangements, separation agreements, or other paperwork to their decisions and incorporate such items into their decrees. As such, we find that the magistrate's decision with its attached worksheet complied with the procedural requirements of R.C. 3119.22 and 3119.24.
 {¶ 23} As for the trial court's adoption of the magistrate's decision, the magistrate was the original trier of fact. The decision of the trial court adopting the magistrate's decision need not restate the three statutorily required items. Thus, it is not error that the trial court failed to set forth the three items in its own journal.
 {¶ 24} We should now turn our attention to the final child support order of the magistrate. The worksheet attached to the magistrate's decision shows the presumed amount of child support as required by R.C.3119.22 and 3119.24. It establishes that under ordinary circumstances and if Ms. Linam had sole custody, Mr. Linam would be required to pay $9,780.83 per year in child support. The magistrate's decision also stated findings of fact to support a deviation in that it noted that this was a true shared parenting plan with each party having the children 50 percent of the time. However, the magistrate failed to specifically state in the journal that the presumed amount would be unjust or inappropriate and not in the children's best interests as required by R.C. 3119.22 and3119.24.
 {¶ 25} Yet, Ms. Linam's July 17 objections to the July 3 magistrate's decision do not state with particularity that she was contesting a failure to make a certain finding. Rather, she stated that the magistrate erred in calculating child support because it (1) used the wrong figures, (2) improperly deviated from the rebuttably presumed amount of child support, (3) for considering Mr. Linam's debts to deviate; and (4) for other reasons. The first issue was later corrected by the magistrate in a nunc pro tunc judgment. The third issue was sustained by the trial court. The fourth issue is too general to be addressed. The second issue does not indicate a complaint that the magistrate failed to state that the presumed amount would be unjust or inappropriate and not in the children's best interests.
 {¶ 26} In fact, Ms. Linam agreed that some deviation was warranted. Thus, she conceded that the presumed amount was unjust or inappropriate and not in the children's best interests. Her only issue was with the amount of the deviation. As such, this argument is without merit. See Civ.R. 53(E)(3)(b) (requiring objections to be stated with particularity). In any event, based upon our decisions under the next two subassignments, Ms. Linam's argument is moot with regards to the findings in the final child support order. Ms. Linam's first subassignment is overruled.
 SUBASSIGNMENTS OF ERROR NUMBERS TWO AND THREE {¶ 27} The second and third subassignments of error contend:
 {¶ 28} "The trial court erred in deviating by an amount which equalizes each parent's share of the total child support obligation when the parents do not make equal amounts of income."
 {¶ 29} "The trial court erred in giving an automatic credit for the time each parent has custody of the children."
 {¶ 30} It appears there are two threshold issues to discuss with regards to the formula used by the magistrate and approved by the trial court. First, with regards to both the temporary and final child support orders, we must determine whether deviating by 50 percent was a proper exercise of discretion or whether a deviation of 22 percent (based on time spent with the obligor over a regular visitation order) would have been more appropriate. Second, with regards to only the final child support order, we must determine whether the court is to take a percentage of the total combined child support obligation and use that figure to deviate or take a percentage of each party's annual support obligation and use that figure to deviate.
 {¶ 31} Specifically, as to the first issue, we must decide whether the court properly exercised its discretion by allowing a 50 percent deviation for shared parenting based upon 50% of the children's time being spent with each parent. Ms. Linam claims that the deviation should only be 22 percent because a standard visitation order gives the obligor 28 percent of the time with the children and the difference between 28 percent and 50 percent is 22 percent.
 {¶ 32} It appears Ms. Linam is looking at the issue incorrectly. The magistrate and trial court merely explain it as a 50 percent deviation based upon 50 percent of time being spent with Mr. Linam. To explain the concept more deeply, it may help to consider the following: say that in standard visitation, the child spends approximately 25 percent of the time with the nonresidential obligor and 75 percent of the time with the residential obligee; if we make the custody evenly shared, then the shared parenting obligor spends double the time with the child as a nonresidential obligor (and as a result, the obligee spends less time with the child); because the shared parenting obligor spends double the time with the child (compared to a nonresidential obligor), it is reasonable for a court to conclude that he should pay half as much as a nonresidential obligor; this explains the 50 percent deviation from the presumed amount for nonresidential obligors. Said in another way, Ms. Linam focuses on the approximately 25 percent (out of the total of 100 percent of the time) extra time spent by Mr. Linam, but does not recognize that she spends 25 percent (out of the total 100 percent) less time with the children than a sole custody residential obligee, for a total of 50 percent deviation. Thus, it appears that the magistrate and trial court properly used their discretion under the facts and circumstances in this case to deviate by 50 percent rather than 25 percent or 22 percent.
 {¶ 33} The next issue presented deals with the fact that in the temporary order, the magistrate deviated from Mr. Linam's annual amount by 50 percent of Mr. Linam's annual amount; however, the magistrate veered from this method when making the same deviation at the time of the final order. Specifically, in the final order, the magistrate deviated from Mr. Linam's annual amount by taking 50 percent of the total of bothparties' combined annual amounts. Obviously, one of these computations is incorrect. We have determined that the latter method is erroneous.
 {¶ 34} For instance, the procedure used in the final order actually provides over a 68% deviation rather than the intended 50 percent deviation. The problem is exemplified when one considers that even though Mr. Linam's income went up by almost $7,000 (we do note Ms. Linam's income went up almost $3,500) from the temporary order to the final order and even though his child care expenses went from $1,728 to $0, his child support went from $352.30 per month to $259.78 per month.
 {¶ 35} We conclude that the magistrate should have performed the same type of calculation in the final order as it did in the temporary order. That is, take half of Mr. Linam's presumed annual amount ($9,780.83 split in half is $4,890.41) and deviate by that amount. This leaves him liable to pay $4,890.42 per year; rather than a mere $3,056.30 per year.
 {¶ 36} Ms. Linam correctly argues that a court should not attempt to equalize the share of the total obligation where the parties' incomes are different. Under our above analysis, the rationale and result is not equalization of obligation. Rather, it is merely deviation in an amount approximating the time spent with each parent. The percentage each parent should contribute to the total obligation was already figured to arrive at the presumed amount in accordance with the worksheet.
 {¶ 37} We now address the argument of appellant that deviation for shared parenting is not an "automatic credit." This contention mirrors the holding of the Ohio Supreme Court in Pauly v. Pauly (1997),80 Ohio St.3d 386. However, the doctrine is not violated here. Pauly
dealt with a parent who argued that he should get a setoff between his presumed amount and the mother's presumed amount. The Pauly Court held that such an automatic credit only occurs in a split parenting arrangement, not a shared parenting arrangement. Id. at 387-388. The Court then noted that under R.C. 311.35(B)(6)(a) (which is identical to our statute R.C. 3113.24) a trial court cannot automatically deviate from the statutorily presumed amount of child support. Instead, if the trial court desires to implement a deviation, it must do so only after making certain findings. Id. The issue concerning findings was resolved in the first subassignment of error.
 {¶ 38} Using Pauly, one trial court granted a 42.66 percent deviation to the father because the children spent 40% of the time with him. He appealed because he wished for a setoff between his annual amount and the mother's annual amount. The appellate court cited Pauly and held that the trial court properly deviated for the amount of time spent with each parent based upon the 60/40 shared parenting. Hubin v. Hubin (June 30, 2000), 10th Dist. No. 99AP-1156. The Supreme Court affirmed in Hubinv. Hubin (2001), 92 Ohio St.3d 240. Although the Hubin father wanted a setoff instead of a deviation, the court affirmed the amount of the deviation granted to him, which used a formula similar to the one in the case at bar.
 {¶ 39} Here, the magistrate considered the requisite factors for deviation and found a deviation for time spent to be warranted. The magistrate did not grant an automatic credit in the sense used by thePauly court. As such, this argument is without merit.
 {¶ 40} As for any arguments that the court abused its discretion in performing its case by case evaluation and deviating by 50 prcent, this is when Mr. Linam's transcript argument could come into play. The judgment entries on their faces are not improper as a matter of law. Any factual issues surrounding the amount of final child support would require a transcript. Regardless, there is no indication that the decision to deviate by time spent was unreasonable, arbitrary, or unconscionable. SeeHubin, supra. The trial court did not abuse its discretion in choosing 50 percent as the deviation amount. Rather, the court erred in multiplying the wrong figure by 50 percent in the final order.
 {¶ 41} Under the above analysis, the magistrate and trial court decisions regarding the temporary child support order are affirmed. However, the decisions regarding the final child support order are reversed and remanded with instructions to enter a child support order in the amount of $4,890.42 per year.
 SUBASSIGNMENT OF ERROR NUMBER FOUR {¶ 42} Ms. Linam's fourth and final subassignment of error contends:
 {¶ 43} "The trial court erred in considering court ordered payments in deviating in the child support amount when the division of property was 50/50."
 {¶ 44} In two sentences, Ms. Linam argues that the court abused its discretion in deviating based upon other court-ordered payments because the property division was equal and thus any obligations Mr. Linam was ordered to assume were offset by the assets he received.
 {¶ 45} We have already upheld the deviation based upon shared parenting. As such, any mention of court-ordered payments being set forth as a further justification for deviation was harmless.
 {¶ 46} Regardless, the property division was not equal at the time of the temporary order as there had not yet been a property division. Rather, Mr. Linam was ordered to maintain the marital assets pending the divorce. Thus, as the trial court found, other court-ordered payments could be a reasonable justification for a deviation in the temporary order.
 {¶ 47} Moreover, as for the final order, the magistrate's language on other court-ordered payments was irrelevant. The magistrate did state that its child support deviation was "also a deviation due to the substantial debt the court has ordered the father to pay." However, the magistrate had already revealed, "[d]ue to the fact that this is a true shared parenting plan with each party having the children 50% of the time, the court will deviate from the guidelines by the 50% time spent with each parent." In any event, the trial court agreed with Ms. Linam on this issue and found that the magistrate erred in finding that the debt itself was a sufficient reason for deviation. (The court did note, however, that Mr. Linam's cash flow could be considered a deviation factor concerning expenses and ability to maintain an adequate household for the children as permitted by R.C. 3119.24(B)(2) and (3).) Hence, this subassignment is overruled.
 {¶ 48} For the foregoing reasons, the judgment of the trial court on the temporary child support order is affirmed, and the judgment on the final child support order is reversed and remanded with instructions to enter an order in the amount of $4,890.42 per year.
Waite, P.J., and DeGenaro, J., concur.